110104 Executive Mailing Service v. Joshua Braxton Good afternoon. Brad Elward on behalf of Executive Mailing Service. We have an issue before the court. Samantha Suede, the evidence case. The question is whether the commission properly rejected the Corvail Utilization Review non-certification of two medical procedures in this case, an IDET procedure and a discogram. It's our position there was no evidence offered that these procedures were reasonable and necessary other than the fact that they were ordered and performed. So the IDET procedure, IDET is a better way to say it, the IDET procedure is simply a situation where you inject a probe into the disc in the back and it heats up and it can shrink the disc, the tissues in the disc area. And they also say it can possibly cauterize. I'm not quite sure what the medicinal value of the treatment is, but nevertheless, it's claimed by some to work. The discogram, as the Court is probably familiar from other cases, is a situation where the needle is inserted into the center of a disc, a dye is inserted, it's visible on an X-ray. The injection creates a pressure and it's used to allegedly identify whether or not a disc is contributing to the problems. Now, in this case, this was tried as a 19B. There were numerous issues. The only issues that are now before the Court are the reasonableness and necessity of these two procedures. After conservative treatment, Dr. Glazer recommended the discogram and the IDET procedure, correct? Yes, he does. Yes, the procedure was recommended. Clearly, the Utilization Review Report submitted recommended non-certification of those procedures. Correct. And you're placing great emphasis on the reports, correct? Yes. And I want to make sure that the Court understands we're not asking the Court to give that a heightened level of emphasis. Well, because that contradicts the statute. I don't think that's what the legislature intended when it passed that. It's supposed to be considered as with other evidence. Our position in this case is even when you give it the same consideration as other evidence, what evidence is there to contradict the detailed findings of the Utilization Report that says that these two procedures are not reasonable and not necessary? What we've got when we look at... It also says that they're used, they've been used under similar circumstances, doesn't it? Pardon me? Doesn't it also say that they've been used under similar circumstances? The Utilization Report does say that, but it also talks about the results in these various procedures and how they've been lacking. And over time, they've demonstrated that they're not as effective as they once claimed. And I think the Utilization Reports go through and they... Now, granted, they're not the easiest thing to read, but when you look through them, they document according to national fact-based medical standards what these procedures are and what the... But we also understand that both of these procedures were recommended by his treating physician. M.D.? Well, I think recommended is a loose term. I think when we look at the record, when we look at Dr. Gleiser's records and we see the discussions that he has, I think I'm almost comfortable saying this is a conversation that he has with the petitioner. There's no opinion in this case, there's no testimony in this case that says that these procedures were reasonable and necessary to a medical degree of certainty, reasonable degree of medical certainty. Wait a minute. You know, when a doctor recommends a procedure and the doctor is not found to be incompetent, can't the commission reasonably infer that the doctor would not recommend an unreasonable procedure? Now, whether it's necessary or not is another issue. But can't they infer that he only recommends reasonable medical treatment? Is there evidence that he's... In a general sense, yes. In this case, I don't think so. When you put all the evidence together in this case and we look at the nature of this injury, we look at a low back strain from a relatively minor insignificant event lifting plastic trays weighing less than five pounds. He's diagnosed at the hospital and by the IME as having a low back strain. He goes in for five months of medical treatment at $147,000. Clearly this is a situation where it's send the patient around to various places and run up the medical bills. That's exactly what happened in this case. And these procedures were created by the General Assembly to help give us as employers a means to come in and say these are unnecessary and these are unreasonable procedures or they're too frequent. And the utilization report is our process for doing that. And we did so in this case. They did not file a review. And I said they did not appeal pursuant to the appeal provisions which are provided for the utilization review. They did not challenge that. All they had to do was get a letter from this doctor that said these are reasonable and necessary. From another doctor. They could have brought in an IME or they could have called this gentleman as a witness. But they didn't do it. They didn't prove their case. Well, but you acknowledged that the recommendation was not made until after unsuccessful conservative treatment had been applied. Pardon me? You acknowledged that he received the services as an alternative to invasive treatment after the original conservative treatment didn't work. Yeah, he did. Yeah, definitely. But these procedures didn't work either. The IDETs did not work. And one of the things I think that you would look at this in hindsight. It doesn't tell you that it was unnecessary because it didn't work. No, but it falls right within the utilization review report's concerns that these tests don't work and they don't produce the results that they're claimed to have produced. And it just falls with that. It's not dispositive. I agree with you. I certainly agree with you. But let's look at Dr. Glaser's records from April. And at most, all we have is a conversation where he discussed the pros and cons of these procedures. That that offers no opinion to a reasonable degree of medical certainty as to whether they're reasonable or necessary. And I think that's the standard that they had to meet. It's almost as if they brought in the records and said, here, arbitrator, here they are, decide them, and we're just going to let you decide this case on these records alone. But the problem is these records lack any kind of causation opinion. And I don't think we can rest on the fact that these procedures were discussed with the petitioner. There ought to be a higher level of requirement. And there ought to be a higher level of requirement when we come in with a documented report from an organization that uses national guidelines, evidence-based, fact-based guidelines, and says these are, these according to the procedures and the literature and the guidelines that are out there are not reasonable and they're not necessary. And what did they refute that with? Nothing. And that's why we're asking this Court to take a close look at this and say those two procedures should not have been included and the benefits should not have been awarded. Thank you. Counsel, please. Good afternoon, Your Honors. My name is Matt Jones here on behalf of the appellee, Mr. Joshua Garcia. Several points to that issue. First and foremost, you know, this is an issue, as Mr. Elwood had stated, solely with regard to these two procedures, not as to whether an accident occurred, not as to causal connection, et cetera. I resent the fact that the injury has been categorized over and over again as a simple sprain strain, when, in fact, I believe the decision of the commission as it stands right now is quite clear that Dr. Elwood's treatment and his treatment were essentially overruled by the opinions of his treating physicians thereafter who diagnosed as a discogenic condition in nature. So we're not merely dealing with a sprain strain. We're not merely dealing with, you know, bumps and bruises. And I think the law of the case at this point substantiates that. Secondly, with regard to, and Your Honor touched on this from the very start, I do believe that it's reasonable to infer and to imply that a recommendation from a treating physician for medical treatment, that that is in and of itself stating that I as a medical treating physician believe that this is reasonable and necessary. Even though the magic language may not have been used. Exactly, Your Honor. And quite frankly, I think that every, if this were the requirement on a public policy matter, if it were held that without the magic language, as you put it, is not present in a medical record, then you're going to have doctors that are just rubber stamping magic language on every single piece of paper. I believe that this x-ray is medically reasonable and necessary with a reasonable degree of medical and surgical certainty. We'll have that and it will be meaningless, essentially, because every doctor will do it for every single thing that he ever does. The fact that it is a recommendation for treatment, and it's not characterizing it as, with all due respect, characterizing it as a conversation and that Mr. Garcia just picks up and decides to have the IDAP procedure or this discography, certainly characterizing that as anything other than an order for treatment or recommendation for treatment, I believe is a vast misconstruction of facts and evidence. As to the facts and evidence themselves, we're here on a manifest weight issue, as counsel correctly stated. It is not as though the commission looked at this and decided, well, decided nothing at all. Never commented, never did anything, just a word of the treatment. The commissioners specifically discussed these reports, specifically addressed the criteria being used, and issued a specific decision stating that they considered it and believed that that criteria is not appropriate. Essentially, they have found the witness at issue, and this is a report tendered by, granted she cites to various literature, this is a report tendered by a registered nurse named Isabelle Pysak, in contradiction to the opinions of a board-certified pain management specialist, Dr. Scott Glaser, MD. So I think it is well within the purview of the commission to evaluate that. The commissioners are trained, medically speaking. They understand this. They've dealt with these issues. I think it is well within their right to look this over and decide this criteria, although you've got plenty of literature explaining this result and that result and various other scenarios in which it's been ineffective. In my reading, this is correct. This peer-reviewed clinical report acknowledges that this IDET procedure had been performed 60,000 times prior to June of 2005. Absolutely. And also indicates that, as the other procedure, that this was done on a regular basis. Absolutely. As an alternative to lumbar fusion, which is exactly how Dr. Glaser phrased it in his report. So certainly, as has been addressed, after unsuccessful conservative treatment, my client, a very young man at the time, I believe he was 27 or 28 at this time, was given options between a minimally invasive procedure or a lumbar fusion. And he opted for the less invasive one, which was then torn to shreds by this utilization report prepared by a registered nurse. Who is this? You say this is prepared by a registered nurse. Who is John S. Cho, MD? John S. Cho, MD? Yeah. Your Honor, I'm not certain. He's the one that signed it. He signed the utilization report? According to mine. I have it right here. In the record, I note that there are various mentions of the preparing physician being the nurse, Ms. Heisnick. I mean, I have the utilization report here, and it appears to be six pages in length. And it ends with the signature John S. Cho, MD, anesthesia pain management, and gives his medical license number. If that is the case, then I sincerely apologize. I noticed that... It says I hereby certify that I completed and approved the above report, declared that the information contained in this ordinance attachments, if any, is true and correct to the best of my knowledge, given the information provided me at the time of the report. Your Honor, if that is the case, then I certainly do apologize for being mistaken on that issue. So you misinterpreted that. However, is it also true that the utilization report is not special evidence entitled to greater weight before the commission and other evidence, is it? Absolutely, Your Honor. And the commissioner, in fact, stated in the initial statements regarding that, you know, this is to be considered as relevant evidence, though not dispositive, which is precisely the language set forth in Section 8.7. It is my contention that the commissioner, the commissioners decided that this evidence was, as set forth by a witness, you know, that it was not credible evidence. And I think that the contention I need to specifically rebut evidence that was found not to be credible, which was not just found to be credible in a lackadaisical manner. It was after consideration. I think that it holds up relatively solidly that this is not a scenario in which a rational trial, in fact, could not have found in favor of the petitioner on this issue. Your Honor, do you have any other questions? Thank you, counsel. Thank you very much. Any follow-up? I just want to address two comments that my opponent made. First of all, he talked about the commission's decision being supported by the evidence, and obviously we're all familiar with the standard in pointing to facts in the evidence, et cetera. But I asked the Court to take a look at the commission's decision where they say that the utilization report may have been too strict or it might be unduly rigid. And I guess I would say, based on what? Where's the evidence? If there was some type of an opinion or a deposition where the doctor was asked about these types of procedures and he gave some interpretations and they made these findings, I would lose that. But based on what? Where is the evidence in the record that supports these two findings by the commission? It's not in there. He talks about the opinions of Dr. Glaser. What opinions? They have a conversation about the risks and benefits. You know, if we talk about bread, I want to go jump off a bridge and you say, well, we're going to talk about the risks and benefits and put it down. Are you saying in your opinion it's a reasonable thing for me to do just because you have a discussion and you record the fact that we have the discussion about me wanting to do that because risks and benefits? What does that tell us? It doesn't tell us anything. Requiring them to put language in there that says to a reasonable degree of medical certainty, I think that's what their burden is. Their burden is to come in and to demonstrate that this is reasonable and necessary to a reasonable degree of medical certainty. And they didn't do it. Thank you. For a protected matter you're under advisement for disposition.